UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VICTOR EDUARDO CALDERON GARAY *on
behalf of himself and all other
persons similarly situated*,

                        *Plaintiff*,                                **MEMORANDUM
                                                             ORDER**
                                                            23-cv-03451 (ARR) (JMW)

         -against-

EURO METALSMITH AND VINCENT
D'ANGELO,

                        *Defendants*.
-------------------------------------------------------------X

**APPEARANCES:**

Matthew John Farnworth, Esq.
Peter Arcadio Romero, Esq.
**Law Office of Peter A. Romero PLLC**
490 Wheeler Road
Suite 250
Hauppauge, NY 11788
*Attorneys for Plaintiff*

Ryan M Eden
**Zabell & Associates**
1 Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

        Plaintiff Victor Eduardo Calderon Garay ("Plaintiff"), a former employee of Defendant

Euro Metalsmiths, Inc. ("Euro Metalsmiths"), commenced this action on May 8, 2022, on behalf

of himself and similarly situated persons against Defendants Euro Metalsmiths and Vincent

D'Angelo (hereinafter "Defendants"), alleging violations of the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq*., ("FLSA"), the New York Labor Law Articles 6 and 19, § 650 *et seq.,* and

1

the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("NYLL"). (ECF No. 1 at 1.) The parties having resolved their differences, before the Court is Plaintiff's motion for approval of the FLSA settlement. (ECF No. 12.) For the following reasons, Plaintiff's motion is **granted**, and the proposed settlement agreement is therefore approved.

## BACKGROUND

Plaintiff was employed by Defendant Euro Metalsmiths as a welder for approximately two years between September 2020 through September 2022. (ECF No. 1 at 3.) On May 8, 2023, Plaintiff filed a complaint on behalf of himself and similarly situated persons against Defendants alleging they "failed to pay Plaintiff and other similarly situated employees premium overtime wages for hours worked in excess of forty hours per week." (ECF No. 1.) More specifically, Plaintiff alleged that Defendants: (i) "failed to provide Plaintiff with a notice and acknowledgement of his wage rate upon Plaintiff's hire as required by Labor Law § 195[;]" (ii) "failed to provide Plaintiff with an accurate wage statement each pay period accurately stating the number of regular hours worked and the number of overtime hours work as required by Labor Law § 195[;]" and (iii) "failed to post required notices regarding payment of minimum wages and overtime as required by the FLSA and NYLL." (ECF No. 1 at 3.)

On October 19, 2023, Plaintiff advised the Court via letter motion that the parties reached a settlement and sought approval from this Court of the proposed settlement agreement (hereafter, the "Settlement Agreement") (ECF. No. 12), which includes approval regarding the reasonableness of the attorneys' fees. (*Id.*) On October 20, 2023, the parties consented to the undersigned's jurisdiction (ECF No. 13), and District Judge Allyne R. Ross referred the Motion for Settlement Approval to the undersigned to "conduct a *Cheeks* hearing[,]" "determine the

2

motion, and enter a final judgment." (ECF No. 14). On October 26, 2023, Plaintiff provided the Court with the attorneys' time records from May 9, 2023 to October 26, 2023. (ECF. No. 15.) On November 27, 2023, the undersigned held a hearing pursuant to *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) for approval of the proposed settlement (hereinafter, "*Cheeks* Hearing"), and subsequently approved the settlement, indicating that a formal Memorandum and Order Ruling on the Motion would follow (ECF No. 16.)

## DISCUSSION

A. **Applicable Standard**

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. *Cheeks*, 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). The protections of the FLSA are strong, even "employees cannot waive the protections of the FLSA." *Perry v. City of New York*, No. 21-2095, 2023 WL 5490572, at *7 (2d Cir. Aug. 25, 2023).

Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."

3

*Cheeks*, 796 F.3d at 206. "[I]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018, *report and recommendation adopted*, 2018 WL 741369 (Feb. 7, 2018). In reviewing the reasonableness of any proposed settlement, courts consider the totality of the circumstances, including the following relevant factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

> Factors specifically weighing against settlement approval include:
>
> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id.* at 336 (internal quotation marks omitted).

Even if an application of the *Wolinsky* factors demonstrates that the agreement is fair and reasonable, courts must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*[.]" *Ezpino v. CDL Underground Specialists, Inc.*, No, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3037406 (July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive

4

practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206.

Courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *see also Ceesae*, 2018 WL 1767866, at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement").

Where a court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 597 (2d Cir. 2020). That is, it is not this Court's role to "blue pencil" or modify the proposed agreement. Rather, the Court's role is simply to assess the terms of the proposed settlement to ensure that the agreement is fair and reasonable. *Wolinsky*, 900 F. Supp. 2d at 335 ("[B]efore a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable.").

### B. The Settlement Agreement

The Settlement Agreement totals $12,500, with Plaintiff receiving $8,065.33 and Plaintiff's counsel receiving $4,434.67 in fees and litigation costs (ECF No. 12-1 at 3.) The settlement will be paid in two equal payments: the first 21 days after the Court approves the agreement, Defendant's receive a W-9 from Plaintiff, and Defendant's receive a W-9 form from Counsel, and the second 30 days after the first payment. (*Id.*)

5

Additionally, Plaintiff agrees to release all wage-related claims against Defendants. It does not waive all possible claims (*Id*. at 4.) Part of the release provision reads:

> This release of wage and hour claims includes, but is not limited to, all claims for unpaid minimum wage, overtime, commissions, whether based on common law or otherwise, and all claims for improper deductions. Failure to provide statutory notices, failures to provide accurate pay stubs, travel time, spread of hours pay, tips, uniforms, call-in pay, bonuses, expenses, reimbursements and gratuities during Plaintiff's employment with the Company and any other compensation or wages, liquidated damages, compensatory damages, punitive damages, penalties, attorneys' fees, interest and/or costs related to the claims filed in this action.

(*Id*.)

Notably, the Settlement Agreement does not contain a confidentiality clause, but does contain a mutual non-disparagement provision. (*Id*. at 7-8.) Plaintiff asserts that the non-disparagement clause allows the parties to speak truthfully about their experience litigating this action (ECF No. 12 at 4.) The non-disparagement clause reads:

> In consideration of the Defendants' undertakings contained in this Agreement, Plaintiff agrees that he shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill, or standing in the communities of the Releasees, and (2) referring to or in any way commenting on any of the Releasees in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms, social media and the like), in a way that would materially damage the reputation, goodwill or standing in the communities of the Releasees, unless compelled to do so by legal process.
>
> In consideration of Plaintiff's undertakings contained in this Agreement, Defendant agree that Defendants' officers and employees shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage Plaintiff's reputation, goodwill, or standing in the community, and (2) referring to or in any way commenting on Plaintiff in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms, social media and the like), in a way that would materially damage Plaintiff's reputation, goodwill or standing in the community.
> Notwithstanding this subsection, nothing shall prevent any party to this agreement from making truthful statements about the terms of the settlement agreement of their experience in this litigation.

(ECF No. 12-1 at 7-8.) Furthermore, the Settlement Agreement does not prohibit Plaintiff from filing a charge or complaint with, or participating in an investigation or proceeding conducted

by, the EEOC. *(Id*. at 4-5.) For the reasons set forth below, the Court finds that these terms are acceptable.

### C. The *Wolinksy* Factors

Having reviewed the submissions, the Court finds that the five *Wolinsky* factors weigh in favor of approval. *First*, Plaintiff calculates that his best recovery under the FLSA totals $9,746.50—with $4,873.25 for unpaid wages and $4,873.25 for liquidated damages. (ECF No. 12 at 3.) If Plaintiff's claims are subject to a two-year statute of limitations because Defendant did not act willfully, the unpaid wages damages would be reduced to $3,953.25 (*Id*.) Additionally, if Defendants can prove they made a good faith effort complying with the FLSA, Plaintiff is not entitled to liquidated damages. (*Id*.)

*Second,* the settlement averts what could amount to considerable additional expenses and burdens in preparing their defenses and claims and pursuing further discovery. The costs of preparing and taking this case through trial and an inevitable ensuing appeal—given the complex FLSA overtime issues and number of potential Plaintiffs—would have dramatically increased the costs to date. Plaintiff asserts that settling now avoids substantial costs, including discovery, depositions, motion practice, and trial. (*Id*.) Defendants assert they have limited financial resources; thus, Plaintiff risks recovering less even if successful at trial. (*Id*.)

*Third*, the parties faced significant litigation risk if they proceeded to trial. Defendants argue that they correctly paid Plaintiff and produced some employment records to show as much. (*Id*. at 2.) Plaintiff disagrees, arguing he worked extra hours not reported in the produced records. (*Id*. at 2-3.) The parties also disagree over whether Plaintiff is entitled to liquidated damages. As such, Plaintiff asserts there are numerous risks to litigating this case. (*Id*.)[1] Settlement, therefore,

---

[1] For example, Plaintiff asserts that a trial would hinge on each parties' credibility because Plaintiff disputes the veracity of the produced employment records. (ECF No. 12 at 3.) Additionally, if Defendants

7

is an effective vehicle to avoid the significant risks and costs in further litigating this matter for all parties.

*Fourth*, the parties advised the Court at the *Cheeks* Hearing that the settlement is a product of arms-length bargaining between the parties, as the parties reached a resolution through "early discussions and document exchanges" prior to the Court's Initial Conference. *See* ECF No 16; *see also* ECF No. 12 at 1. Counsel for both sides assured they are very experienced and have engaged in extensive document production leading up to this settlement (*Id.*) The advocacy exhibited throughout this litigation demonstrates that the settlement is unquestionably the result of arms-length negotiations.

*Fifth*, there is no indicia, nor is there even a suggestion to the Court, that the settlement is a product of fraud, coercion, or collusion. The parties attested so at the *Cheeks* Hearing. (ECF No. 16). In sum, the parties have come to a reasonable settlement after arms-length negotiations which permits them avoiding the risks and burdens of litigating this dispute.

Moreover, the *Wolinsky* factors that weigh against settlement do not compel a rejection of the proposed settlement in this case. *First*, as to whether there are similarly situated workers employed by Defendants, Plaintiff filed the action as a proposed collective action as authorized by the FLSA, § 29 U.S.C. § 216(b). (ECF No. 1.) Though Plaintiff never formally moved for certification, it is likely that if there were similarly situated workers employed by Defendants, they could have joined the action. Further, the proposed Settlement Agreement releases Defendants from the claims brought only by Plaintiffs. (ECF No. 12-1 at 4.) Any similarly

---

can prove they made a good faith effort to comply with the FLSA and that any violations were not willful, Plaintiff is not entitled to liquidated damages, and his FLSA claims would be subject to a two-year statute of limitations, further reducing amount of the unpaid wages recoverable. (*Id.*)

8

situated workers, if they chose to litigate, would not be prejudiced from pursuing a future claim against Defendants.

*Second*, given the time and resources spent during the litigation process, as well as the issues arising from Defendants' financial viability (ECF No. 12 at 3.), it is likely that the Defendants will be deterred from violating the FLSA and NYLL, as alleged by Plaintiffs, in the future. It is also unlikely that Plaintiffs' individual circumstances will reoccur.

*Third*, the Court finds that the record is bereft of any history of non-compliance with the FLSA by the same employer or other employers in the same industry or geographic region. Further, the parties have not suggested otherwise.

*Fourth*, though the Court acknowledges that the desirability of a mature record that further develops labor law may exist in some cases. Here, there is no special reason implicating that interest. Nonetheless, this factor alone does not compel denying a motion for approval of this settlement. While it is possible that further discovery could reveal more information as to similarly situated workers or a proper calculation of hours worked by Plaintiffs, the parties have agreed not to venture down this path.

Finally, the proposed Settlement Agreement does not contain any of the problematic provisions that are identified in *Cheeks*. There is no confidentiality provision (ECF No. 12-1), and the non-disparagement clause is acceptable given that it allows for truthful statements. *See* ECF No. 12-1 at 4-5; *see also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement agreement that specifically stated "[a]ny party is allowed to make truthful statements related to or concerning the Action"); *Cortes v. New Creators, Inc.,* 15-CV-5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough

the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.").

Although the agreement contains a release, it is not an unfettered general release requiring that Plaintiffs waive any and all claims that they may have against Defendants. (ECF No. 12-1 at 4.) Rather, it is limited to claims that were, and could have been, brought under the FLSA and NYLL up to the date of the Settlement Agreement. (*Id*.) The release is thus reasonable. *Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030 at *2 (E.D.N.Y. Oct. 25, 2021). As discussed more fully below, Plaintiff's counsel has provided documentation supporting the proposed attorneys' fees and costs, which the Court finds are fair and reasonable. (ECF No 15.)

### D. Attorney's Fees

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt.*, Inc., No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17

Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiff's Counsel is requesting $4,032.67, representing one-third of the settlement amount, and $402.00 for the complaint's filing fee. Thus, the proposed attorney's fees are reasonable under the percentage method. But that doesn't end the inquiry. Having reviewed the statements and billing records of Plaintiffs' counsel, the Court also finds the proposed attorney's fees fair and reasonable after performing a lodestar cross-check.

In utilizing the lodestar approach, courts must multiply a reasonable number of hours required for the case with the attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see, e.g., Li v. Chang Lung Grp. Inc.*, No. 16 Civ. 6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17 Civ. 2520 (FB) (ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 17, 2018), report and recommendation adopted as modified by 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the district has been set at $300 to $400); *Torres v. Gristedes Operating Corp.*, 04 Civ.

11

3316 (PAC), 2012 U.S. Dist. LEXIS 127890, at *11 (S.D.N.Y. Aug. 6, 2012) (noting that courts in SDNY award hourly rates of $550 or more to "extraordinary attorneys held in unusually high regard by the legal community).

Plaintiff's counsel presents attorney time records in support of his Motion for Settlement Approval, which show an hourly rate for Counsel Peter Romero of $400.00 and for Counsel Matthew Farnworth of $250.00. (ECF No. 15.) Accordingly, Plaintiff's lodestar amount is $4,145.00, multiplying the 13.70 hours spent on this case with a $250.00 to $450.00 hourly rate. Courts in this circuit have approved similar attorneys' fees. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (finding that "rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time . . . are reasonable and consistent with rates allowed in this district."). Moreover, this total amount of fees and costs is unopposed by Defendant, weighing in favor of approval of this amount. Accordingly, the lodestar cross-check affirms the requested attorney's fee of $4,032.67, which is exactly a third of the settlement amount and is fair and reasonable in this case.

## CONCLUSION

For the reasons stated herein, the motion for *Cheeks* approval (ECF No. 12) is hereby **GRANTED**.

Dated: Central Islip, New York
December 5, 2023

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge